## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID JAMES MCNEIL,              )
                                 )
                Plaintiff,       )
                                 )
        v.                       )        1:19CV213
                                 )
ANDREW M. SAUL,                  )
Commissioner of Social Security,[1] )
                                 )
                Defendant.       )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, David James McNeil, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 1.)  Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. ___")), and both parties have moved for judgment (Docket Entries 10, 12; see also Docket Entry 11 (Plaintiff's Brief); Docket Entry 13 (Defendant's Memorandum)).  For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul substitutes for Nancy A. Berryhill as the Defendant in this suit.  Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for SSI, alleging a disability onset date of June 2, 2005. (Tr. 444-55.) Upon denial of that application initially (Tr. 178-94, 234-37) and on reconsideration (Tr. 195-211, 243-47), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 248-50). Plaintiff and his attorney attended the hearing (Tr. 128-40), during which Plaintiff amended his onset date to January 6, 2012, the protective filing date of his application for SSI (Tr. 131). The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 212-25.)

The Appeals Council granted Plaintiff's request for review (Tr. 230-33, 290-300, 624, 625-26), and remanded the matter for further administrative proceedings, to include vocational expert ("VE") testimony to address the impact of any non-exertional limitations in the residual functional capacity ("RFC") on the occupational base (Tr. 231-32). A new ALJ convened a supplemental hearing, which Plaintiff, his attorney, and a VE attended. (Tr. 141-77.) The ALJ then issued a decision finding that Plaintiff had not met the requirements for disability under the Act. (Tr. 10-26.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-9, 33-127, 442-43, 648-50), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

2

In rendering that disability determination, the ALJ made the following findings:

1. [Plaintiff] has not engaged in substantial gainful activity since January 6, 2012, the application date.

. . .

2. [Plaintiff] has the following severe impairments: asthma[;] atherosclerotic-induced coronary heart disease, treated with a stent; hypertension; diabetes mellitus with neuropathy; obesity; borderline intellectual function; depression; and[] anxiety.

. . .

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

4. [Plaintiff] has the [RFC] to perform light work . . . except he must avoid climbing ropes, ladders, or scaffolds; must avoid concentrated exposure to hazards and exposure to fumes, dusts, gases, or poor ventilation; can include no more than occasional climbing of ramps or stairs, kneeling, crawling, crouching, stooping, and balance [sic], or the use of foot pedals. [Plaintiff] can perform simple, routine and repetitive tasks that require no contact with the general public, or more than occasional contact with coworkers and supervisors. His work must be learned by demonstration and be non-production-oriented and require no more than routine changes in work activities.

. . .

5. [Plaintiff] has no past relevant work.

. . .

9. Considering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [he] can perform.

3

. . .

    10. [Plaintiff] has not been under a disability, as
    defined in the  . . . Act, since January 6, 2012, the
    date the application was filed.

(Tr. 15-26 (bold font and internal parenthetical citations
omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Plaintiff has not established entitlement to relief under the
extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead,
the Court "must uphold the factual findings of the ALJ if they are
supported by substantial evidence and were reached through
application of the correct legal standard." Hines, 453 F.3d at 561
(internal brackets and quotation marks omitted). "Substantial
evidence means 'such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion.'" Hunter v. Sullivan,
993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402
U.S. 389, 401 (1971)). "It consists of more than a mere scintilla

4

of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any

5

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the [RFC] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th

---

[2] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ committed a reversible error of law by failing to provide an adequate narrative discussion to explain the conclusions reached in the hearing decision's [RFC] assessment" (Docket Entry 11 at 3 (bold font and single-spacing omitted)); and

2) "[t]he ALJ committed a reversible error of law by failing to explain why she discounted the opinion of [] consultative psychologi[cal examiner Dr. J. Craig Hunt]" (id. at 5 (bold font and single-spacing omitted)).

---

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 7-16.)

## 1. Narrative Explanation for RFC

In Plaintiff's first assignment of error, he maintains that "[t]he ALJ committed a reversible error by failing to provide an adequate narrative discussion to explain the conclusions reached in the hearing decision's [RFC] assessment" in violation of Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (July 2, 1996) ("SSR 96-8p"). (Docket Entry 11 at 3 (bold font and single-spacing omitted).) As a general matter, Plaintiff contends that, "[i]n the section of the hearing decision addressing [Plaintiff]'s RFC, the ALJ failed entirely to provide a narrative discussion describing how the medical and nonmedical evidence supports the conclusions reached in the RFC assessment." (Id. at 4 (citing Tr. 23-25).) More specifically, Plaintiff argues that the ALJ's decision lacks a "discussion of a left knee MRI that demonstrated a tear of the posterior horn of the lateral meniscus" (id. (citing Tr. 651)), a "discussion of a pulmonary function test that demonstrated a moderate breathing obstruction" (id. (citing Tr. 704)), and a discussion of "the numerous medical treatment records that document ongoing uncontrolled diabetes causing hyperglycemia with consistently high blood glucose and hemoglobin A1C readings" (id. (citing Tr. 686, 722, 765, 787, 790, 825, 827,

9

900, 901, 916, 959, 963, 1012, 1029, 1030, 1037, 1045)).  According to Plaintiff, "[b]ecause the ALJ failed to provide the narrative discussion required by SSR 96-8p, the Court has no basis to determine if the hearing decision's RFC assessment is supported by substantial evidence."  (Id. at 5.)  Those assertions entitle Plaintiff to no relief.

RFC measures the most a claimant can do despite any physical and mental limitations.  Hines, 453 F.3d at 562; 20 C.F.R. § 416.945(a).  An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain.  See Hines, 453 F.3d at 562-63; 20 C.F.R. § 416.945(b).  The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy).  See 20 C.F.R. § 416.967.  Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level.  See 20 C.F.R. § 416.969a(c).

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). . . .  The [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  SSR 96-8p, 1996 WL 374184, at *7.  Although the ALJ need not

discuss every piece of evidence in making an RFC determination, <u>see</u> <u>Reid v. Commissioner of Soc. Sec.</u>, 769 F.3d 861, 865 (4th Cir. 2014), he or she "must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion," <u>Woods v. Berryhill</u>, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted). Here, the ALJ's decision supplies the necessary "accurate and logical bridge," <u>id.</u> (internal quotation marks omitted), between her discussion of the evidence and the RFC assessment.

As an initial matter, and contrary to Plaintiff's arguments (<u>see</u> Docket Entry 11 at 3-5), the ALJ did supply a narrative discussion of the medical and non-medical evidence to support the RFC determination in connection with her findings at steps two and three of the SEP (<u>see</u> Tr. 16-22). That discussion includes a thorough review of Plaintiff's hearing testimony (<u>see</u> Tr. 16-17, 18) and statements Plaintiff and his wife made in Function Reports (<u>see</u> Tr. 18), analysis of Plaintiff's school records and daily activities (<u>see</u> Tr. 18), as well as appropriate consideration of the objective medical evidence (<u>see</u> Tr. 18-19, 20, 21-22, 23-24) and opinion evidence in the record (<u>see</u> Tr. 24). Although the majority of that discussion appears in sections of the ALJ's decision preceding the RFC determination, that approach nevertheless suffices to satisfy SSR 96-8p's requirement of a

11

narrative discussion supporting the RFC.  See McCartney v. Apfel, No. 01-1439, 2002 WL 191573, at *1 (4th Cir. Feb. 7, 2002) (unpublished) (noting "that the ALJ need only review medical evidence once in his [or her] decision"); Kiernan v. Astrue, No. 3:12CV459, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that "[w]here the ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion in [a later] analysis").

Plaintiff next faults the ALJ for failing to "discuss[ ] a left knee MRI that demonstrated a tear of the posterior horn of the lateral meniscus." (Docket Entry 11 at 4 (citing Tr. 651).) That argument fails for two reasons.  First, the ALJ labors under no obligation to discuss every piece of evidence in the record in formulating the RFC, see Reid, 769 F.3d at 865, but rather, must indicate the weight afforded to "obviously probative exhibits," Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984).  Here, Plaintiff has not shown how the left knee MRI qualifies as an "obviously probative exhibit[]," id.  (See Docket Entry 11 at 4.) Notably, the MRI in question, dated July 10, 2011, preceded the relevant period in this case by six months (see Tr. 651), Plaintiff did not include any left knee conditions among his allegedly disabling impairments on his Disability Report (see Tr. 494), and Plaintiff did not testify at either his original or the

12

supplemental hearing about any problems with his left knee (see Tr. 128-40, 141-77). Consistent with those omissions by Plaintiff, the ALJ did not find that Plaintiff had a medically determinable impairment involving his left knee, let alone a severe impairment. (see Tr. 16-17).

Second, even if the ALJ erred by not discussing the 2011 left knee MRI, any such error by the ALJ remains harmless under the circumstances of this case. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). The ALJ assessed Plaintiff's complaints of "debilitating pain" as "inconsistent with repeated clinical findings of no abnormalities, normal gait, and normal muscle strength and tone," as well as "[x]-rays of his left knee and right shoulder [which] ha[d] been negative." (Tr. 24 (citing Tr. 702, 728, 800-02, 1042, 1089).) Moreover, the ALJ assigned "partial weight" to the opinion of the reconsideration-level state agency medical consultant (Tr. 24), who opined that Plaintiff could perform light work (see Tr. 203) involving the occasional climbing of ladders, ropes, and scaffolds, frequent climbing of ramps and stairs, and frequent postural movements due, in part, to "[degenerative joint disease]" of the "l[eft] knee w[ith] pain on [range of motion]" (Tr. 204), but the ALJ "found

13

<u>additional</u> limitations based on a complete record" (Tr. 24 (emphasis added)) and <u>precluded</u> Plaintiff from climbing ladders, ropes, and scaffolds, as well as limited Plaintiff to only <u>occasional</u> climbing of ramps and stairs and other postural movements (<u>see</u> Tr. 23). The ALJ also gave "great weight" to consultative medical examiner Dr. Janaki R. Setty (Tr. 24), who opined that, despite Plaintiff's left knee degenerative joint disease, he remained able to stand and walk for "<u>at least</u> six hours in an eight-hour work day" and could occasionally engage in postural movements (<u>see</u> Tr. 701 (emphasis added)). In light of the foregoing analysis, Plaintiff has not shown how remand for an express discussion of the MRI in question would lead to a more favorable outcome in his case.

Plaintiff also challenges the ALJ's decision as lacking a "discussion of a pulmonary function test [('PFT')] that demonstrated a moderate breathing obstruction." (Docket Entry 11 at 4 (citing Tr. 704).) A review of the ALJ's decision reveals that she did discuss Plaintiff's PFT results as part of her discussion of whether Plaintiff's respiratory impairment met a listing at step three of the SEP:

> [Plaintiff] has a history of smoking two packs of cigarettes a day, which has led him to develop breathing difficulties, including asthma since childhood, chronic sinusitis and recurrent bronchitis, due to chronic obstructive pulmonary disease. Stopping smoking has been regularly recommended, and it appears he has at least cut down on the number of cigarettes he smokes daily. <u>[PFTs] performed June 22, 2012, revealed an FEV1 of 1.94 that</u>

> was 56% of predicted. Post-bronchodilator, he
> experienced only 24% improvement which led to a
> conclusion of a mild restrictive effect. Chest x-rays
> taken December 14, 2013, March 29, 2015, March 25, 2016,
> and February 9, 2017, have confirmed emphysematous and
> chronic bronchitic changes in his lungs. Despite these
> findings, [Plaintiff]'s oxygen desaturation levels on
> various presentations have been above 96%, which
> indicates normal exercise tolerance.

(Tr. 22 (emphasis added) (internal parenthetical citations
omitted).) The ALJ's above-quoted discussion also supports the
ALJ's preclusion of "exposure to fumes, dusts, gases, [and] poor
ventilation" in the RFC (Tr. 23), as well as her finding that
Plaintiff's asthma did not satisfy the requirements of any listings
(see Tr. 22).

Plaintiff additionally insists that the ALJ neglected to
discuss "the numerous medical treatment records that document
ongoing uncontrolled diabetes causing hyperglycemia with
consistently high blood glucose and hemoglobin A1C readings."
(Docket Entry 11 at 4 (citing Tr. 686, 722, 765, 787, 790, 825,
827, 900, 901, 916, 959, 963, 1012, 1029, 1030, 1037, 1045).)
Again, the ALJ's decision belies Plaintiff's allegation:

> The medical evidence establishes that [Plaintiff] has
> been treated with oral medications for type II diabetes
> mellitus and hypertension since at least [] 2011. His
> treatment has been complicated because for most of the
> period under consideration, he had no regular doctor. He
> has frequently reported to various area hospital
> emergency departments with elevated blood pressure and
> blood glucose levels, usually because he has run out of
> his medications.
>
> . . . [Plaintiff] has been noted to have consistently
> elevated blood glucose levels (hyperglycemia) as

15

indicated by elevated hemoglobin A1c levels in November of 2015 of 11.4% and 10.1% on February 12, 2016 and 10.6[%] on June 28, 2016.

. . .

[Plaintiff] has received most of his medical care through emergency room visits, despite being referred to free medical clinics. He has complained of generalized weakness, dry mouth, sweating, and headaches during frequent episodes of hypoglycemia due to running out of his medications. He also has numbness and tingling in his feet and hands. While not confirmed by electro-diagnostic testing, these symptoms have been attributed to peripheral neuropathy, for which he has been prescribed gabapentin through a patient assistance program.

(Tr. 20-21 (emphasis added) (internal parenthetical citations omitted).) As the above-quoted discussion makes clear, the ALJ expressly acknowledged Plaintiff's "consistently elevated blood glucose levels" (Tr. 20), but noted that Plaintiff's noncompliance with his diabetes medication and lack of follow-up with a primary care physician contributed to his hyperglycemia, and further observed that gabapentin helped his neuropathy symptoms (see Tr. 16; see also Tr. 153). Plaintiff has simply not shown how further consideration of that evidence by the ALJ would change the outcome of his SSI claim.

In sum, because the Court can trace the path of the ALJ's reasoning with regard to the RFC assessment, Plaintiff's first assignment of error falls short.

16

## 2. Opinions of Dr. Hunt

In Plaintiff's second and final issue on review, he maintains that "[t]he ALJ committed a reversible error of law by failing to explain why she discounted the opinion of [Dr. Hunt]." (Docket Entry 11 at 5 (bold font and single-spacing omitted).) In particular, Plaintiff asserts that, although "[t]he ALJ explained the portions of [Dr.] Hunt's opinion that were given significant weight and incorporated into the hearing decision's mental RFC assessment[, ] the ALJ did not explain at all why other portions of [Dr.] Hunt's opinion were apparently discounted." (Id. at 7 (citing Tr. 24).) In that regard, Plaintiff notes that the ALJ's decision lacks a "discussion of why the medical evidence is inconsistent with [Dr.] Hunt's opinion that [Plaintiff] may have moderate or greater difficulty in attempts to understand, retain and follow instructions or that he demonstrated problems with concentration, persistence, or pace [('CPP')]." (Id. (citing Tr. 24).) According to Plaintiff, "[t]his Court has held in previous cases that an ALJ's failure to explain the conflict between the RFC assessment and the opinion of a consultative examiner was error warranting remand." (Id. at 7-8 (citing Ingram v. Berryhill, No. 1:17CV135, 2017 WL 6501927, at *4-6 (M.D.N.C. Dec. 19, 2017) (unpublished), recommendation adopted, slip op. (M.D.N.C. Jan. 4, 2018) (Schroeder, C.J.)).) Plaintiff's contentions miss the mark.

17

Consultative examiners like Dr. Hunt do not constitute treating sources under the regulations, see 20 C.F.R. § 416.927(c)(2), and thus their opinions, as a general proposition, do not warrant controlling weight, Turberville v. Colvin, No. 1:11CV262, 2014 WL 1671582, at *6 (M.D.N.C. Apr. 23, 2014) (unpublished), recommendation adopted, slip op. (M.D.N.C. May 15, 2014) (Eagles, J.). However, the ALJ must nevertheless evaluate consultative opinions using the factors outlined in the regulations, and expressly indicate and explain the weight he or she affords to such opinions. See 20 C.F.R. § 416.927(c) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he or she] receive[s]" and, where an opinion does not warrant controlling weight, the ALJ must "consider all of the . . . factors [in 20 C.F.R. § 416.927(c)(1)-(6)] in deciding the weight [to] give to any medical opinion." (emphasis added)); Social Security Ruling 96-5p, Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183, at *5 (July 2, 1996) ("SSR 96-5p") (noting that ALJs "must weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions" (emphasis added)).

On June 7, 2012, Dr. Hunt conducted a consultative psychological examination of Plaintiff (Tr. 692-97), reporting Plaintiff's diagnoses as "Major Depressive Disorder, recurrent, severe with psychotic features - Provisional" and "Borderline

18

Intellectual Functioning - Provisional" (Tr. 696). On mental status examination, Dr. Hunt noted that Plaintiff "presented with a disheveled demeanor and demonstrated questionable motivation with below average responsiveness to the examination process" (Tr. 694), and Plaintiff's abilities with regard to immediate retention and recall, recent memory, remote memory, fund of information, calculations, abstract thinking, and judgment ranged from "Marginal" to "Below Expectation" (Tr. 694-96). With regard to Plaintiff's insight, Dr. Hunt remarked that Plaintiff's "presentation made it difficult to determine if he tended to present himself in the most negative light or was in fact experiencing decompensation." (Tr. 696.) Ultimately, Dr. Hunt concluded that Plaintiff's "intellectual functioning f[ell] in the borderline to mild deficit range," but that Plaintiff "appear[ed] to have the intellectual capacity to perform simple, routine, repetitive tasks [('SRRTs')]." (Id.) Dr. Hunt further believed that Plaintiff "m[ight] have moderate or greater difficulty in attempts to understand, retain, and follow instructions" (Tr. 696-97 (emphasis added)), "m[ight] have difficulty interacting effectively with peers, coworkers, and supervisors" (Tr. 697), "demonstrated problems with [CPP]" (id. (emphasis added)), and "m[ight] have moderate to severe difficulty tolerating the stress associated with day-to-day work activity (id.). Dr. Hunt cautioned that his "[c]onclusions [we]re offered with mild reservations

19

regarding validity given [Plaintiff's] overall presentation." (Tr. 696.)

> The ALJ evaluated and weighed Dr. Hunt's opinions as follows:
>
> Partial weight has been afforded to the opinions offered by Dr. Hunt after his psychological evaluation of [Plaintiff] on June 7, 2012. Dr. Hunt's conclusions that [Plaintiff] retains the capacity to perform [SRRTs] in a low stress environment with limited social interactions with others is consistent with the other medical evidence of record, and have been adopted in the [RFC]. Further, [Dr. Hunt's] notation of some cognitive limitations have [sic] also been accommodated in concluding that [Plaintiff]'s work must be learned by demonstration.

(Tr. 24 (internal citation omitted).) The ALJ's above-described analysis defeats Plaintiff's arguments for two reasons.

First, the ALJ assigned only "partial weight" to Dr. Hunt's opinions, and expressly indicated which of Dr. Hunt's opinions the ALJ credited (Tr. 24), thereby also making clear which opinions she did not fully credit. The instant case thus differs from a situation where an ALJ affords significant or great weight to a medical source opinion but, without accompanying explanation, fails to either expressly adopt or reject certain of that source's opined restrictions. See Ingram, 2017 WL 6501927, at *4-6 (remanding (in part) because, despite ALJ's assignment of great weight to (and praise of) consultative examiner's opinion, RFC did not reflect examiner's restrictions and decision lacked explanation for their absence from RFC).

Second, the ALJ's decision largely accommodates Dr. Hunt's opinions regarding Plaintiff's abilities to handle instructions and

to maintain CPP.  At step two of the SEP, the ALJ found that Plaintiff had <u>moderate</u> limitation in his ability to understand, remember, and apply information and <u>moderate</u> limitation in his ability to maintain CPP.  (<u>See</u> Tr. 19-20.)  To account for those deficits, the ALJ limited Plaintiff to SRRTs, non-production-oriented work learned by demonstration, and no more than routine changes in work activities in the mental RFC.  (<u>See</u> Tr. 23.)  Given those facts, and the ambiguity of Dr. Hunt's opinion that Plaintiff "<u>m[ight]</u> have moderate <u>or greater</u> difficulty" with handling instructions (Tr. 696-97 (emphasis added)), Plaintiff has not shown how even the ALJ's wholesale adoption of those opinions would have led to greater (let alone work preclusive) restrictions in the mental RFC.  Indeed, Dr. Hunt himself ultimately concluded that, despite possible "moderate or greater difficulty" in handling instructions (Tr. 696-97) and "demonstrated problems with [CPP]" (Tr. 697), Plaintiff remained capable of performing SRRTs (<u>see</u> Tr. 696).

Under these circumstances, Plaintiff's challenge to the ALJ's evaluation and weighing of Dr. Hunt's opinions falls short.

### III.  CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing the Decision of the Commissioner of Social

Security (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that this action be dismissed with prejudice.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

August 31, 2020